UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORST RESCHKE and
GISELA RESCHKE,

    Plaintiffs,

vs.                                                  Case No. 11-12639

CITIMORTGAGE, INC. and                 HON. AVERN COHN
CITIBANK, N.A.,

    Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (Doc. 13)[1]**

**I. INTRODUCTION**

This is another one of many cases pending in this district involving a default on a mortgage. The property at issue is a vacation home which is encumbered by two mortgages. As will be explained, this is the second lawsuit plaintiffs Horst and Gisela Reschke have filed against defendants CitiMortgage, Inc. (CMI) and Citibank, N.A. (Citibank) regarding the property. Although foreclosure proceedings have been suspended pending litigation, it is undisputed that plaintiffs have not made a payment on the mortgages in over two years. Plaintiffs filed suit against defendants in this court, asserting several claims relating to the mortgage process:

    Count I-     Declaratory Judgment
    Count II-    Injunctive Relief

---

[1] Upon review of the papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

    Count III-    Violations of Fair Debt Collection Practices Act
    Count IV-    Fair Debt Collection Practices Act: Slander of Credit
    Count V-    Trespass
    Count VI-    Negligence
    Count VII-    Negligent Infliction of Emotional Distress
    Count VIII-    Intentional Infliction of Emotional Distress
    Count IX-    Invasion of Privacy
    Count X-    Violations of Michigan Consumer Protection Act
    Count XI-    Violations of Michigan's "Anti-Lockout" Statute
    Count XII-    Common Law Fraud
    Count XIII-    Punitive Damages

Now before the Court is defendants' motion to dismiss and/or for summary judgment (Doc. 13).[2] For the reasons that follow, the motion is GRANTED. The case is DISMISSED.

## II. BACKGROUND

### A. Procedural Background

On March 10, 2011, plaintiffs filed a complaint in Antrim County against defendants. The complaint asserted substantially the same claims as in this action. Plaintiffs sought and obtained a restraining order preventing foreclosure proceedings during the pendency of the litigation. Defendants removed the case to federal court on the grounds that the complaint asserted federal claims and on the grounds that the parties are diverse and the amount in controversy exceeds $75,000.00. That case, Reschke v. Citibank, 11-11410, was assigned to the undersigned. Thereafter, the parties stipulated to transfer the case to

---

[2] Initially, plaintiffs filed a motion to dismiss in response to defendants' motion (Doc. 17). Plaintiffs' motion to dismiss, in reality, was a motion to remand the case to state court. Plaintiffs stated they would dismiss the federal claims without prejudice and asserted that the amount in controversy did not exceed $75,000.00. The Court denied plaintiffs' motion, finding that diversity jurisdiction was proper, and directed plaintiffs to file a response to the motion See Memorandum And Order Denying Plaintiffs' Motion to Dismiss (Doc. 17) And Directing Plaintiffs To File A Response To Defendants' Motion To Dismiss And/Or For Summary Judgment Within (20) Days (Doc. 26). Plaintiffs thereafter filed a response to defendants' motion (Doc. 27).

the Western District of Michigan (Doc. 5). After the case was transferred, plaintiffs apparently voluntarily dismissed the case.

Shortly after the dismissal of the March 2011 action, on June 17, 2011, plaintiffs filed a complaint in this district. The case was reassigned to the undersigned as a companion to the March 2011 action. The June 2011 action is the case before the Court.

The Court held a status conference with the parties on June 19, 2011 and issued a scheduling order. The parties then engaged in discovery. Thereafter, the parties filed motions which were adjourned at the parties' request as they pursued a settlement. The parties, however, did not reach a settlement.

## B. Factual Background[3]

### 1. The Property, Mortgages, and Liens

This case involves property located at 6455 NW Torch Lake Drive, Kewadin, Michigan 49648, in Antrim County. Plaintiff purchased the property for use as a second/vacation home. The property consists of four lots: 22, 23, 24, and 25. Only lots 23, 24, and 25 are involved in this action. The property has been the subject of mortgages issued by Comerica Bank, CMI and Citibank, as described below.

Regarding Comerica Bank, in 2003, plaintiffs gave a $1,000,000.00 continuing collateral mortgage to Comerica Bank for all four lots. In 2004, the mortgage was amended, and the loan amount was increased to $1,400,000.00, secured by two master revolving notes. The Comerica Bank mortgage was discharged in 2007.

Regarding CMI, on February 9, 2007, plaintiffs signed a promissory note which was

---

[3] Plaintiffs have not followed the Court's summary judgment guidelines; they failed to respond to defendants' statement of undisputed facts.

3

secured by a $1,000,000.00 interest-only mortgage with CMI for lots 23, 24, and 25. The mortgage provided that Mortgage Electronic Registration Systems, Inc. (MERS) would be the mortgagee, as nominee for CMI, its successors and assigns. Further, the mortgage provided that MERS could assign the mortgage and that its assignees would retain the power of sale contained in the mortgage. On the same day, plaintiffs entered into a $500,000 home equity line of credit with Citibank; plaintiffs secured the line of credit with a mortgage to Citibank for lots 23, 24, and 25.

The property also has been the subject of liens. Antrim County records show that in July 2009, a judgment lien was recorded by Hanover Insurance Company to Horst Reschke in the amount of $701,400.17. In September 2009, an attorney's lien was recorded by Kalas Kadian, P.L.C. against plaintiffs in the amount of $50,212.00. The attorney lien specifically described Lots 23, 24, and 25 of the property.

**2. Default**

Around August 2010, plaintiffs informed CMI they were unable to pay past due property taxes owed on the property, and requested that CMI pay the taxes on their behalf and add the amount paid to the principal balance owed on the mortgage. Prior to that time, plaintiffs were responsible for the taxes, and had no prior arrangement with CMI to include an escrow account for taxes. CMI, in order to protect its security, under the terms of the mortgage, paid the past due property taxes in the amount of $39,868.41. CMI did not, however, add the amount paid to the balance owed. Rather, under the terms of the mortgage, CMI set up an escrow account to collect the taxes it had paid and the amounts necessary to pay property taxes in the future. CMI notified plaintiffs that this action resulted in an increase in their monthly payment owed to CMI.

Plaintiffs defaulted on their mortgage obligations. The parties agree that the last payment made to CMI was on or about November 2010. Plaintiffs have made no further payments since that time.

CMI sent notice to plaintiffs on February 16, 2011 that it would begin foreclosure proceedings on the property due to plaintiffs' default. On February 21, 2011, MERS assigned the mortgage to CMI. CMI, through foreclosure counsel, Orlans Associates, gave a second notice to plaintiffs as an alert that foreclosure proceedings were imminent. CMI also gave notice to plaintiffs pursuant to M.C.L. § 600.3205a on March 10, 2011 that a foreclosure sale would be held on April 8, 2011.

As noted above, foreclosure proceedings have been adjourned as a result of this litigation and, as of this date, has not taken place.

### III. STANDARDS OF REVIEW

#### A. Fed. R. Civ. P. 12(c)

A motion to dismiss under Fed. R. Civ. P. 12(c) is reviewed in the same manner as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Jelovske v. Bredesen, 545 F.3d 431, 434 (6th Cir. 2008). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint

that states a plausible claim for relief survives a motion to dismiss." Id. at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies which are appended to the motion. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).

### B. Fed. R. Civ. P. 56

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set out specific facts showing a genuine issue for trial." Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009). The Court must "view the facts in

the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences." King v. Taylor, 694 F.3d 650, 661 (6th Cir. 2012) (citation omitted). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## IV. DISCUSSION

### A. Declaratory Judgment and Injunctive Relief

**1.**

Plaintiffs' claims center around their belief that "[d]efendants are not the proper parties to foreclose. . . ." This belief is based on MERS' involvement as nominee for CMI and MERS' subsequent assignment of the mortgage to CMI. Plaintiffs' claim that "the Assignment of Mortgage by CMI is invalid" because there are no records showing that MERS had an interest in the mortgage or note is erroneous. Plaintiffs mortgaged the property to MERS, as nominee for CMI, its successors and assigns:

> Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property. . . .

(Doc. 13-4, p. 4).

The Michigan Supreme Court has made clear that, under Michigan law, a mortgage granted to MERS as nominee for lender and lender's successors and assigns is a valid and assignable mortgage. Residential Funding Co., LLC v. Saurman, 805 N.W.2d 183 (Mich. 2011); see also Matthews v. Mortgage Electronic Registration Sys. Inc., No. 10-13740, 2011 WL 2560329 (E.D. Mich. April 5, 2011).

In the mortgage instrument, plaintiffs granted MERS a mortgage on the property and

expressly recognized the following:

> Borrower understands and agrees that MERS holds only legal title to the Interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of lender including, but not limited to, releasing and canceling this Security Instrument.

The mortgage was recorded. MERS assigned the mortgage to CMI and the assignment was likewise recorded. Plaintiffs lack standing to challenge the assignment. See, e.g., Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 399 F. App'x 97, 102-03 (6th Cir. 2010).

This Court, following the course of the Michigan Supreme Court, has held that securitization of a mortgage does not impact the ability of the mortgagee to foreclose by advertisement. See Leone v. Citigroup, Inc., No. 12-10597, 2012 WL 1564698, at *4 (E.D.Mich. May 2, 2012) (collecting cases). As the Michigan Supreme Court stated in Saurman, Michigan's legislature intended "to include mortgagees of record among parties entitled to foreclose by advertisement, along with parties who 'own[ ] the indebtedness' and parties who act as the 'servicing agent of the mortgage.' " 490 Mich. at 910 (citing Mich. Comp. Laws § 600.3204(1)(d). As mortgagee of record, CMI is entitled to foreclose by advertisement assuming all other statutory requirements, which plaintiffs have not challenged, are met. Plaintiffs' argument has no merit.

**2.**

In addition, the Citibank home equity line of credit mortgage, which is also recorded, provided that "the credit secured by the Property is an open-end revolving line of credit at

a variable rate of Interest" (Doc. 13-5, p. 10). In exchange for the line of credit, plaintiffs granted a mortgage in favor of Citibank (Id.). Plaintiffs do not provide any reason why Citibank cannot foreclose on the property for plaintiffs' failure to make payments on the loan.

Accordingly, plaintiffs' declaratory judgment count will be dismissed and their request for an injunction preventing foreclosure will be denied. An injunction "is an equitable remedy, not an independent cause of action." Terlecki v. Stewart, 278 Mich. App. 644, 663 (2008). Because plaintiffs cannot set forth an underlying cause of action against defendants, the request for injunction must be denied.

### B. Fair Debt Collection Practices Act

The Sixth Circuit recently held that mortgage foreclosure is "debt collection" under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. Glazer v. Chase Home Finance LLC, ___ F.3d ___, 2013 WL 141699, at *9 (6th Cir. 2013). Notwithstanding, there are a number of exceptions to the FDCPA's definition of who constitutes a "debt collector." 15 U.S.C. § 1692a(6). As was the case in Glazer, one exception is relevant here: "the term 'debt collector' does not include any person attempting to collect 'any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person.'" 2013 WL 141699, at *2 (citing 15 U.S.C. § 1692a(6)(F)(iii)). The Sixth Circuit held that this exception applies to mortgage servicers, regardless of whether they own the debt obligation they service. Id. Indeed, the Sixth Circuit reasoned that "[r]equiring debt ownership would render the exception nugatory." Id. (citation omitted).

9

Here, CMI serviced the mortgage loan from its inception, before plaintiffs were in default. Therefore, under 15 U.S.C. § 1692a(6)(F)(iii), CMI is not a "debt collector." See Mohlman v. Long Beach Mortg., No. 12-10120, 2013 WL 490112, at *4 (E.D. Mich. Feb. 8, 2013) (reasoning that mortgagees and mortgage servicing companies are not "debt collectors"). Likewise, Citibank was the mortgagee on the home equity line of credit mortgage from the beginning, also before plaintiffs were in default. They too are not "debt collectors" under 15 U.S.C. § 1692a(6)(F)(iii).

Further, even if defendants were "debt collectors," plaintiffs have done nothing more than speculate that defendants violated the FDCPA. The allegations in the complaint do not satisfy the "plausibility" requirement set forth in Ashcroft v. Iqbal, supra. Nor have plaintiffs proffered any evidence, sufficient to overcome summary judgment, to show that defendants violated the FDCPA. Plaintiffs' brief states that defendants "violated the FDCPA by utilizing false, deceptive, or misleading representation or means in connection with the collection of the debt and violated the FDCPA by utilizing unfair or unconscionable means to collect or attempt to collect the debt." However, plaintiffs did not state what, if anything, defendants did to violate the FDCPA. Therefore, the FDCPA claim will be dismissed.[4]

### C. Fair Credit Reporting Act

Plaintiffs' slander of credit claim under the Fair Credit Reporting Act (FCRA) is devoid of merit. "The FCRA imposes a duty upon furnishers of credit information to report

---

[4] Plaintiffs have not sued Orlans Associates, PC (Orlans), CMI's foreclosure law firm who attempted to collect the debt from plaintiffs, see (Doc. 13-12, p. 2). Thus, whether plaintiffs can maintain a FDCPA claim against Orlans is not an issue before the Court.

accurate information to consumer reporting agencies regarding a consumer's credit." Bach v. First Union Nat. Bank, 149 F. App'x 354, 358 (6th Cir. 2005) (citing 15 U.S.C. § 1681s-2(a)(1)(A)). Plaintiffs admit that they have not made payments on the mortgages since November of 2011. Thus, if defendants furnished any information to reporting agencies which reflects the default, the information would be accurate. However, plaintiffs have not proffered any evidence, nor have they properly alleged that defendants furnished credit information to anyone. Plaintiffs' claim is merely speculative. Thus, the FCRA claim will be dismissed.

### D. Trespass

Plaintiffs claim that defendants entered their property without permission or authorization. Under Michigan law, "[t]respass is an invasion of the plaintiff's interest in the exclusive possession of his land." Adams v. Cleveland-Cliffs Iron Co., 237 Mich. App. 51, 59 (1999) (citing Hadfield v. Oakland Co. Drain Comm'r, 430 Mich. 139, 151 (1988)). Defendants say they are not liable for trespass because the CMI mortgage allowed them to make reasonable entries on the property. They are correct.

The CMI mortgage stated:

> Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

(Doc. 13-4, p. 8).

The complaint states that, "[u]pon information and belief, the [d]efendants, their agents, contractors and/or employees entered the [p]laintiffs' property without permission or authorization" (Doc. 1, p. 9). As defendants correctly note, plaintiffs "give no date of this

11

alleged trespass, nor do they provide any description of where the trespass allegedly occurred" (Doc. 13, p. 22). Plaintiffs speculate that a locksmith may have entered the property, but they do not provide any evidence which supports their position. The locks were not changed, the home was not damaged in any way, and there is no proof that anyone entered the property. Plaintiffs have not proffered any evidence supporting their theory of trespass to survive summary judgment, nor does their claim satisfy the pleading requirements in Iqbal, supra. This claim will be dismissed.

### E. Negligence

Plaintiffs say defendants were negligent for failing to verify that they had a legal interest in the property before collecting payment under the mortgages. This claim is frivolous and requires little discussion. It is clear that plaintiffs granted a mortgage to MERS as nominee for CMI, as well as a home line of equity mortgage to Citibank. CMI serviced the CMI mortgage and had a legal interest in collecting payments. Similarly, Citibank, mortgagee of the home line of equity mortgage, had a legal interest in collecting payments under that mortgage. This claim will be dismissed.

### F. Negligent and Intentional Infliction of Emotional Distress

Plaintiffs' negligent infliction of emotional distress (NIED) and intentional infliction of emotional distress (IIED) claims are premised on their claims that (1) defendants entered their property illegally and (2) defendants do not have any legal interest in the mortgages. As discussed above, defendants do have a legal interest in the mortgages. Further, plaintiffs have not established a colorable trespass claim. Accordingly, the Court will dismiss the NIED and IIED claims.

### G. Invasion of Privacy

Plaintiffs say defendants invaded their privacy by (1) entering their home and (2) holding plaintiffs in a false light to the public by stating that plaintiffs had a mortgage with CMI that was in default. Michigan recognizes four distinct invasion of privacy theories:

> (1) the intrusion upon another's seclusion or solitude, or into another's private affairs; (2) a public disclosure of private facts about the individual; (3) publicity that places someone in a false light in the public eye; and (4) the appropriation of another's likeness for the defendant's advantage.

Lewis v. LeGrow, 258 Mich. App. 175, 193 (2003).

First, the Court has already determined that plaintiffs have not established that defendants trespassed on their property. Thus, their invasion of privacy claim based on an intrusion into their seclusion fails. Second, plaintiffs *did* have a mortgage that was serviced by CMI, the lender, and plaintiffs admit that they stopped making payments on the mortgage. Thus, they cannot maintain a claim of invasion of privacy based on the theory that they were placed in a "false light" in the public eye. As explained above, plaintiffs are mistaken in their belief that defendants do not have a legal interest in the property.

### H. Michigan Consumer Protection Act

Plaintiffs say defendants violated the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws § 445.902. Defendants say that they are exempt from the MCPA, and, therefore, the MCPA count should be dismissed. The Court agrees.

Plaintiffs' claims under the MCPA fail as a matter of law. Section 445.904(1)(a) of the MCPA excludes from the MCPA any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a). Courts have unanimously held that this exclusion to the MCPA applies to residential lending activities

13

of state and federal banks. See, e.g., Newton v. Bank West, 262 Mich. App. 434, 441 (2004) ("Both Michigan courts and federal courts applying Michigan law have consistently held that the MCPA does not apply to claims arising out of residential mortgage loan transactions."); Steinberg v. Fed. Home Loan Mortg. Corp., ___ F. Supp. 2d ___, 2012 WL 4498297, at *7 (E.D. Mich. 2012) (citing Newton, 262 Mich. App. at 438); Droski v. Wells Fargo Bank, N.A., No. 11-11193, 2012 WL 3224134, at *6 (E.D. Mich. Aug. 6, 2012) ("Michigan courts have found that residential mortgage loan transactions are exempt from the MCPA.") (citation omitted); Jozlin v. U.S. Bank Nat. Ass'n, No. 11-12749, 2012 WL 12760, at *6 (E.D. Mich. Jan. 4, 2012) ("Those Michigan courts and federal courts which have applied Michigan law have consistently held that the MCPA does not apply to those claims which have arisen out of residential mortgage loan transactions.") (citations omitted). This case is no different. Plaintiffs' claims under the MCPA will be dismissed.

### I. Michigan's Anti-Lockout Statute

Plaintiffs say defendants violated Michigan's anti-lockout statute by attempting to foreclose on their property. Michigan's anti-lockout statute, Mich. Comp. Laws § 600.2918, provides:

> (1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

The statute is intended to prevent landlords from using force in self-help evictions. Grant v. Detroit Ass'n of Women's Clubs, 443 Mich. 596, 608 (1993). It does not apply here, where the mortgagee has a legal interest in the property, and a right to foreclose when the

mortgagor has defaulted on the loan. Although plaintiffs do not want to leave the property by choice, they have stopped making payments on the mortgages. Accordingly, they have not stated a colorable claim under Michigan's anti-lockout statute.

### J. Fraud

Plaintiffs' claim that defendants are liable for common law fraud does not satisfy Fed. R. Civ. P. 9(b)'s particularity requirements. In order to meet the particularity requirements of Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank v. Dana Corp., 547 F.3d 564, 569-70 (6th Cir. 2008) (citation omitted). Plaintiffs' complaint fails to identify (1) the allegedly false statements, (2) the speaker, and (3) when, where, and under what circumstances the statements were made. Therefore, the fraud claim will be dismissed.

### K. Punitive Damages

Punitive damages cannot be maintained as a standalone cause of action. As explained above, the entirety of plaintiffs' claims will be dismissed, and, therefore, plaintiffs are not entitled to punitive damages.

### V. CONCLUSION

For the reasons stated above, defendants' motion to dismiss and/or for summary judgment is granted. Counts I (declaratory judgment), II (injunctive relief), III (violations of FDCPA), IV (slander of credit), V (trespass), VI (negligence), VII (NIED), VIII (IIED), IX (invasion of privacy), X (violations of MCPA), XI (violations of Michigan's anti-lockout statute), XII (common law fraud), and count XIII (punitive damages), are dismissed.

Plaintiffs' entire complaint is premised on their mistaken belief that defendants do not have a legal interest in the property. To the contrary, they do.

    SO ORDERED.

       S/Avern Cohn
       AVERN COHN
       UNITED STATES DISTRICT JUDGE

Dated: February 20, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 20, 2013, by electronic and/or ordinary mail.

       S/Sakne Chami
       Case Manager, (313) 234-5160